UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZEST ANCHORS, LLC d/b/a ZEST DENTAL SOLUTIONS,

                Plaintiff-Counter Defendant,

-against-v.

BIOMET 3i, LLC d/b/a ZIMVIE,

                Defendant-Counter Claimant.

Case No. 1:23-cv-07232 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Zest Anchors, LLC d/b/a Zest Dental Solutions ("Plaintiff" or "Zest") brings claims against its former distributor, Biomet 3i, LLC d/b/a Zimvie ("Defendant" or "Biomet"), for breach of their distribution agreement. Dkt. 21 ("Amended Complaint"). Following the denial of Biomet's motion to dismiss the Amended Complaint, Biomet asserted counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. 46 at 33-40 ("Counterclaims" or "CC") ¶¶ 21-30, 31-40. Zest now moves to dismiss Biomet's counterclaim for breach of the implied covenant of good faith and fair dealing. Dkt. 52. For the reasons that follow, the Court denies Zest's motion to dismiss.

## BACKGROUND

Except where expressly noted otherwise, the facts stated herein are drawn from Biomet's Answer and Counterclaims, as well as the Distribution Agreement, and are accepted as true for purposes of this motion. *See, e.g.*, *Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 578 n.1 (S.D.N.Y. 2021) (considering master services agreement that was incorporated by reference in counterclaim on motion to dismiss).

I.  **Factual Background**

"Biomet is a leading global manufacturer and distributor of premium dental implants." CC ¶ 7. "Between May 2008 and September 2021, Zest supplied Biomet (and/or its predecessor Zimmer Biomet) with abutments and related dental implant products pursuant to the terms of a series of distribution agreements between Zest and Biomet." CC ¶ 7. The last of these was entered into on or around September 2, 2016. CC ¶ 8; *see* Dkt. 9-1 ("Distribution Agreement"). Biomet distributed the products it purchased from Zest at price terms agreed to by the parties as set forth in the Distribution Agreement. CC ¶ 9; *see* Distribution Agreement § 3.1. The Distribution Agreement also provided "that Biomet would not pay more for certain 'proprietary products' than other parties." CC ¶ 11. The Distribution Agreement required Zest to deliver to Biomet annually "a list of all pricing for the Zest products sold to third parties during the prior calendar year." Distribution Agreement § 3.1; CC ¶ 12. During the term of the Distribution Agreement, Zest allegedly never provided Biomet with the required pricing information. CC ¶ 13.

On or about March 5, 2021, Zest notified Biomet via a letter from its President and CEO, Tom Stratton, that it did not intend to renew the Distribution Agreement. CC ¶ 10. Subsequently, on May 11, 2021, Zest's CFO, Kim Smith, sent a most-favored price analysis to Biomet. CC ¶ 14. The most-favored price analysis did not contain the detail required by the Distribution Agreement, but it indicated that Zest had not provided Biomet with the most favorable price for all proprietary products Zest had sold to third parties as required by the Distribution Agreement. CC ¶ 14.

On September 3, 2021, Zest sent Biomet a letter informing it that the Distribution Agreement had expired on September 2, 2021, and that Zest was invoking its right under Section 13.4 of the Distribution Agreement to repurchase "all Zest product" in Biomet's

2

inventory as of September 3, 2021. CC ¶ 16. The September 3, 2021 letter also "took the position that Biomet must immediately cease selling and marketing all Zest products under the Distribution Agreement." CC ¶ 16. As relevant here, Section 13.4 of the Distribution Agreement provides as follows:

> Upon expiration or termination of this Agreement for any reason, Zest shall have the option, but not the obligation, to repurchase some or all Product in [Biomet's] inventory as set forth below. Should Zest elect, in its sole discretion, to repurchase some or all Products, then [Biomet] shall return the Products requested by Zest and Zest shall repurchase the same at the price paid for such products by [Biomet]. . . . Any Products not purchased by Zest may continue to be sold by [Biomet] in compliance with the terms of this Agreement.

Distribution Agreement § 13.4.[1] Later on September 3, 2021, Zest also sent Biomet a new draft distribution agreement that did not include the most-favorable price terms that were in the Distribution Agreement and instead included different exclusivity and pricing terms. CC ¶ 17; *see* CC ¶ 16. Biomet alleges that the new draft agreement was "part of an effort by Zest to eliminate Biomet as a distributor and convert the market for the products sold by [Biomet] under the Distribution Agreement to direct sales of Zest's own products." CC ¶ 17.

Biomet subsequently provided information regarding its current inventory to Zest, but Zest never repurchased any of Biomet's inventory. CC ¶ 18. Biomet alleges that Zest's refusal to repurchase Biomet's inventory was not in good faith and that Zest has harmed

---

[1] The Distribution Agreement is filed under seal at Dkt. 9-1. *See* Dkt. 12 (order granting request to file Distribution Agreement under seal because it "contains sensitive competitive business information" outweighing the presumption of public access). The Court unsealed portions of the Distribution Agreement in resolving the prior motion to dismiss. *See Zest v. Biomet 3i, LLC*, No. 23-cv-07232 (JLR), 2024 WL 4008164, at *1 n.1 (S.D.N.Y. Aug. 30, 2024) (*Zest I*). The parties have referred to and quoted certain parts of the Distribution Agreement in their motion papers, and the Court has reviewed those sections and determined that the presumption of public access outweighs the need to maintain those sections of the agreement under seal. However, the Court will continue to maintain the other provisions of the Distribution Agreement under seal as set forth in *Zest I*, *see id.*

Biomet in the marketplace by, among other things, preventing Biomet from fulfilling orders and servicing its then-customers. CC ¶ 19. Biomet alleges that as a result of Zest not repurchasing inventory as it stated it would, Biomet suffered damage "in the form of expired and unsold inventory, harm to existing customer relationships, and damage to Biomet's goodwill." CC ¶ 20.

## II. Procedural History

Zest brought this action in New York state court on July 13, 2023, Dkt. 1-1, and Biomet removed the case to this Court on August 15, 2023, Dkt. 1; *see also* Dkt. 1 ¶¶ 7-9. On August 22, 2023, Biomet filed a motion to dismiss, Dkt. 5, which the Court denied as moot after Zest filed its Amended Complaint, Dkt. 26 ("AC"). Biomet then filed a second motion to dismiss on September 19, 2023, Dkt. 23, which the Court denied on August 30, 2024. *See Zest Anchors, LLC v. Biomet 3i, LLC*, No. 23-cv-07232 (JLR), 2024 WL 4008164, at *1 (S.D.N.Y. Aug. 30, 2024) (*Zest I*).

On September 30, 2024, Biomet filed its answer to the Amended Complaint and asserted two counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. 46 at 1-33 ("Ans."); CC ¶¶ 1-40. On October 21, 2024, Zest moved to dismiss Biomet's second counterclaim for breach of the implied covenant of good faith and fair dealing, and filed a declaration and several exhibits in support. Dkt. 52; Dkt. 53 ("Br."); Dkt. 54; Dkts. 54-1 to 54-6. Biomet opposed the motion on November 4, 2024, Dkt. 57 ("Opp."), and Zest filed its reply on November 12, 2024, Dkt. 58 ("Reply"). The motion is thus fully briefed.[2]

---

[2] Biomet requested oral argument via notation on its opposition brief. The Court declines this request because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court

4

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the [counterclaim] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 165 (2d Cir. 2020) (quoting *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178-79 (2d Cir. 2013)); *see also Wells Fargo Bank, Nat'l Ass'n v. GC SHL, LLC*, No. 21-cv-08940 (JPO), 2022 WL 3599131, at *2 (S.D.N.Y. Aug. 23, 2022) ("In evaluating a motion to dismiss a counterclaim under [Rule] 12(b)(6), courts apply the same standard as a motion to dismiss a complaint." (internal quotation marks omitted) (citation omitted)). The court "accept[s] . . . factual allegations as true and draw[s] all reasonable inferences in the [claimant's] favor," *Demirovic v. Ortega*, 771 F. App'x 111, 113 (2d Cir. 2019) (summary order) (omission and final alteration in original) (quoting *LLM Bar Exam, LLC v. Barbri, Inc.*, 922 F.3d 136, 140 (2d Cir. 2019)), but need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009)). A counterclaim is plausible "when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Breuninger v. Williams*, No. 20-cv-07033 (JPC), 2024 WL 3088770, at *4 (S.D.N.Y. June 20, 2024).

## DISCUSSION

As relevant here, Biomet asserts a counterclaim for breach of the implied covenant of good faith and fair dealing. CC ¶¶ 31-40. Zest moves to dismiss this counterclaim for failure

---

acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

5

to state a claim, pursuant to Rule 12(b)(6).  Dkt. 52.  The Court will begin by resolving the parties' dispute about whether the Court can consider extrinsic documents submitted by Zest in support of its motion to dismiss before addressing the merits of that motion.

I. **Consideration of Extrinsic Materials**

Zest submitted six exhibits in support of its motion to dismiss, each of which contains communications between Zest (or its counsel) and Biomet (or its counsel) during and after the termination of the Distribution Agreement.  *See* Dkt. 54-1 ("Ex. 1"); Dkt. 54-2 ("Ex. 2"); Dkt. 54-3 ("Ex. 3"); Dkt. 54-4 ("Ex. 4"); Dkt. 54-5 ("Ex. 5"); Dkt. 54-6 ("Ex. 6").  Zest argues the Court may consider these documents because they are either incorporated in the Counterclaims by reference and/or are integral to the Counterclaims.  *See* Br. at 4 n.2; Reply at 6-8.  For the reasons that follow, the Court will consider only Exhibit 2.

In considering a Rule 12(b)(6) motion to dismiss, "district courts 'may review only a narrow universe of materials,' which includes 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken,' as well as 'documents not expressly incorporated by reference in the complaint that are nevertheless "integral" to the complaint.'"  *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (alteration and omissions adopted) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (similar); *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 32 (S.D.N.Y. 2018) (similar).  For an extrinsic document to be "incorporated by reference," the pleading "must make 'a clear, definite and substantial reference to the documents.'"  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).  The Court may consider documents not incorporated by reference "where the

[pleading] 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the [pleading]." *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). A document is "integral" to the counterclaims where the counterclaimant has "(1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the [pleading].'" *DeLuca*, 695 F. Supp. 2d at 60 (first alteration in original) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

First, the Court will consider Exhibit 2, Zest's September 3, 2021 letter informing Biomet that it was invoking its right under Section 13.4 of the Distribution Agreement to repurchase all Zest product. *See* Ex. 2; CC ¶ 16. The September 3, 2021 letter is incorporated by reference because the Counterclaims refer to the letter by date multiple times, quote from the letter, and summarize its content in detail. *See* CC ¶¶ 16, 34; *see, e.g.*, *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 378 (S.D.N.Y. 1998) (where complaint referred to and quoted "much of [a] letter," the court considered the "entire letter" because it was incorporated by reference). Thus, the Court may properly consider the September 3, 2021 letter as incorporated by reference without converting the instant motion into a motion for summary judgment, *see* Fed. R. Civ. P. 12(d).

However, the Court will not consider the other Exhibits that Zest submitted. Exhibit 1, an August 31 to September 1, 2021 email chain, in which the parties discussed terms for a new distribution agreement, is not incorporated by reference in or integral to the Counterclaims. *See generally* Ex. 1. The Counterclaim allegations do not mention the August 31 to September 1, 2021 emails. Instead, Biomet's Counterclaims refer to a different communication from Zest to Biomet on September 3, 2021, in which Zest sent a new draft distribution agreement. *See* CC ¶ 17. Biomet's Answer denies Zest's allegation in the Amended Complaint that "the parties reached an agreement in principle" on August 31, 2021,

7

but Zest's allegation does not refer any emails, let alone the ones in Exhibit 1. *See* Ans. ¶ 42. Since there is not a "clear, definite, and substantial" reference to the emails in Exhibit 1 (indeed, there is no mention of them at all), the emails in Exhibit 1 are not incorporated by reference. *See Tenemille v. Town of Ramapo*, No. 18-cv-00724 (KMK), 2020 WL 5731964, at *10 n.4 (S.D.N.Y. Sept. 24, 2020) (email not incorporated by reference where it was unclear from the pleading whether the plaintiff actually referenced that email, and made only limited reference to the email's content); *Kulick v. Gordon Prop. Grp.*, No. 23-cv-09928 (KPF), 2025 WL 448333, at *4 (S.D.N.Y. Feb. 7, 2025) (email incorporated by reference where pleading quoted from a specific email); *Samuels v. Urb. Assembly Charter Sch. for Comput. Sci.*, No. 23-cv-01379 (RA), 2024 WL 4008165, at *1 n.1 (S.D.N.Y. Aug, 30, 2024) (similar). Nor are the documents in Exhibit 1 integral to the Counterclaims. Biomet does not dispute that it had actual notice of the emails, but "mere notice or possession is not enough" for a court to treat a document as integral to the pleading — instead, the pleading must "rel[y] heavily upon [the document's] terms and effect." *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Counterclaims make no reference to the August 31 to September 1, 2021 email chain and Biomet does not rely heavily on its terms and effects in framing either of the Counterclaims; as a result, Exhibit 1 is not integral to the Counterclaims. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) (emails were not integral to complaint where "complaint lack[ed] any quotations from the e-mails" and "fail[ed] even to include the term 'e-mail'").

    The Court will not consider Exhibits 3, 4, 5, or 6 for similar reasons. These documents — a September 31, 2021 letter from Biomet to Zest, Ex. 3, a December 13, 2021 letter from Zest's counsel to Biomet, Ex. 4, an email chain between Zest's and Biomet's

counsel between December 15, 2021 and January 21, 2022, Ex. 5, and a letter sent from Zest's counsel to Biomet's on February 22, 2022, Ex. 6; *see* Dkt. 54 ¶ 10 — are not quoted in the Counterclaims, are not specifically referenced therein, and were not otherwise relied on by Biomet in framing the Counterclaims. Like Exhibit 1, they are neither incorporated by reference in nor integral to the Counterclaims, and the Court will not consider them in resolving Zest's Rule 12(b)(6) motion.

Zest's citations to cases where courts in this district considered documents outside the pleadings do not alter the Court's conclusion. *See* Reply at 7-8 (collecting cases). In *Oasis Capital, LLC v. Connexa Sports Technologies Inc.*, for example, the court considered an email exchange where the amended complaint relied heavily on its "terms and effect" such that it was integral to the complaint. *See* No. 23-cv-01038 (LLS), 2023 WL 4304725, at *4 (S.D.N.Y. June 30, 2023). Zest asserts (without explanation) that the documents "form the backbone of Biomet's Counterclaim" and argues that Biomet should not be permitted to "provide a one-sided series of commercial communications and complain about Zest providing the other side of communications." Reply at 7. This mischaracterizes the record and Counterclaims. Biomet has not, for example, provided only part of an email chain and omitted the rest as in *Maron v. Legal Aid Society*, 605 F. Supp. 3d 547, 553 n.2 (S.D.N.Y. 2022), or excerpted only part of a letter and omitted the rest, *see Chardan Cap. Mkts., LLC v. Nw. Biotherapeutics, Inc.*, No. 17-cv-04727 (PKC), 2018 WL 3733948, at *2 n.1 (S.D.N.Y. Aug. 6, 2018). Biomet has not referenced or otherwise provided any part of the communications Zest has now submitted as Exhibits 1, 3, 4, 5, or 6 and did not rely heavily on the information in those communications in framing its pleading. *See Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 631 (S.D.N.Y. 2024) ("Diligent counsel, in conducting the reasonable inquiry required by Rule 11, may review and draw from a plethora of documents

before filing a complaint. But that does not make each and every one of those documents fodder for a Rule 12(b)(6) motion to dismiss." (citation omitted)). While the documents presented by Zest may well be relevant in assessing the facts underlying the Counterclaims on summary judgment or at trial, the Court will not consider those exhibits in resolving the motion to dismiss.

## II. Biomet's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Counterclaim II)

In its second Counterclaim, Biomet alleges that Zest breached the implied covenant of good faith and fair dealing by refusing to repurchase Zest product from Biomet, despite having invoked its right to repurchase the inventory in Biomet's possession, and demanding that Biomet stop sale of the remaining inventory of Zest product. CC ¶ 35. Biomet alleges that this had the effect of withholding a bargained-for benefit under the Distribution Agreement, namely that Zest would repurchase the inventory at the price Biomet paid for the products. *Id.* ¶ 36. In addition, because of Zest's actions, "Biomet was unable to fulfill its orders to existing customers." *Id.* Biomet alleges Zest intentionally and purposefully refused to repurchase the inventory to pressure Biomet to enter a new distribution agreement on terms more favorable to Zest. *Id.* ¶ 38. Zest moves to dismiss Counterclaim II for failure to state a claim, relying on the contract provision that provides Zest with "sole discretion" and "the option, but not the obligation, to repurchase" some or all of Biomet's inventory, Distribution Agreement § 13.4.

### A. Legal Standard

For the reasons set forth in *Zest I*, the Court applies New York law to the Counterclaims. *See* 2024 WL 4008164, at *5 n.6. Under New York law, "implicit in every contract is a covenant of good faith and fair dealing, which encompasses any promises that a

10

reasonable promisee would understand to be included." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) (citation omitted); *accord JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022).  This includes "a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002)); *accord Titus v. UMG Recordings, Inc.*, No. 23-cv-00015 (JLR), 2023 WL 8039622, at *12 (S.D.N.Y. Nov. 20, 2023).  Under New York law, the implied covenant of good faith and fair dealing "does not include any term inconsistent with the terms of the contractual relationship, or create duties which are not fairly inferable from the express terms of that contract." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 288 (S.D.N.Y. 2023) (quoting *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 351 (S.D.N.Y. 2021)).  Thus, "to plead a valid cause of action for breach of the covenant of good faith, a plaintiff must allege facts sufficient to demonstrate that the plaintiff 'reasonably understood' the contract or contractual provision at issue to state a duty to take or refrain from taking a particular action." *Cordero v. Transam. Annuity Serv. Corp.*, 211 N.E.3d 663, 670-71 (N.Y. 2023) (citing *Jennifer Realty*, 773 N.E.2d at 501).[3]

---

[3] Zest cites to *Rowe v. Great Atlantic & Pacific Tea Co.*, 385 N.E.2d 566 (N.Y. 1978), for the proposition that Biomet bears a "heavy burden" to plead its counterclaim. Br. at 7-8.  This reads *Rowe* out of context, since that decision involved a plaintiff's burden of proof at trial, not on a motion to dismiss.  *See Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012) (explaining that *Rowe* was not relevant to a claimant's burden on a motion to dismiss).  Whatever burden Biomet might bear in proving its claims at a later stage, *Rowe* does not change the pleading standard set forth in *Twombly* and *Iqbal*.

11

## B. Biomet Has Stated a Claim

Zest argues that Biomet has not pleaded a claim for a breach of good faith and fair dealing because Section 13.4 gave Zest "sole discretion" and the "the option, but not the obligation" to repurchase products. Br. at 1-2, 8-11. Zest also contends Biomet's alleged breach of the Distribution Agreement precludes Biomet's implied covenant claim. *Id.* at 11. The Court addresses each argument in turn.

First, Biomet has adequately pleaded that Zest breached the implied covenant of good faith and fair dealing. Under New York law, "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (quoting *Fishoff*, 634 F.3d at 653); *see also S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 505 (S.D.N.Y. 2021) ("[E]ven where a contract permits discretion to a contracting party, that party may not exercise that discretion arbitrarily or irrationally."); *Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*, 209 F. Supp. 3d 547, 555 (E.D.N.Y. 2016) (similar). A party acts arbitrarily or irrationally when, among other things, "a party's action . . . directly violate[s] an obligation that may be presumed to have been intended by the parties." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 150 (S.D.N.Y. 2019) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir. 2006)). Specifically, the Distribution Agreement provides that at the expiration or termination of the agreement, Zest has the "option, but not the obligation, to repurchase some or all Product in [Biomet's] inventory" and the "sole discretion" to "elect . . . [whether] to repurchase some or all Products" upon "expiration or termination of th[e Distribution] Agreement." Distribution Agreement § 13.4. "Any Products not purchased by Zest may continue to be sold by [Biomet] in compliance with the terms of this Agreement."

12

*Id.* Biomet alleges that Zest informed Biomet that Zest would exercise its right to repurchase product in Biomet's inventory and Biomet "reasonabl[y] . . . believe[d] that Zest would repurchase the inventory in light of" the September 3, 2021 letter. CC ¶ 34. Zest also took the position that Biomet "must immediately cease selling and marketing all Zest products under the Distribution Agreement." *Id.* ¶ 16. Biomet claims that Zest reneged on its decision to repurchase its product from Biomet in order to gain the upper hand in ongoing contract negotiations and to cause harm to Biomet in the marketplace. *Id.* ¶¶ 19, 38. Biomet also alleges that Zest's subsequent refusal to repurchase any of the product caused Biomet to suffer financial harm and loss of reputation, and interfered with Biomet's contracted-for benefit under the Distribution Agreement, namely that either Zest would repurchase Biomet's remaining inventory or Biomet could resell the product. *Id.* ¶¶ 33-37. Biomet has therefore pleaded that Zest breached its implied promise to not to act arbitrarily or irrationally in exercising its discretion to repurchase its product.

Citing materials outside the Counterclaims, Zest argues that it had good faith reasons for its refusal to repurchase its product from Biomet (for example, because Biomet purportedly refused to provide a timely inventory report) and therefore its actions were not arbitrary or irrational. *See* Br. at 10-11. But this argument relies almost entirely on facts extrinsic to the Counterclaim allegations. Viewing only the allegations in the Counterclaims and the materials incorporated by reference therein (and drawing all inferences in Biomet's favor), the Court finds that the facts alleged support at least a plausible claim that Zest breached the implied covenant of good faith and fair dealing by exercising its discretion under Section 13.4 of the Distribution Agreement in an arbitrary or irrational manner. Whether Biomet will ultimately prevail when all of the facts are considered is another question.

The Court is unpersuaded by Zest's contention that because it had "sole discretion" as to whether to repurchase the Biomet inventory, Biomet cannot state a claim for breach of the implied covenant of good faith and fair dealing because that would change the terms of the contract and impose an obligation to repurchase. Br. at 9-10. Zest cites to several cases in support of its argument that "[w]here a contract allows one party to [exercise a contractual right] in its 'sole discretion' and 'for any reason whatsoever' the covenant of good faith and fair dealing cannot serve to negate that provision." *111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*, 198 N.Y.S.3d 521, 523 (App. Div. 2023) (alterations in original) (quoting *Transit Funding Assocs., LLC v. Cap. One Equip. Fin. Corp.*, 48 N.Y.S.3d 110, 114 (App. Div. 2017)). Zest reads these cases too broadly and the circumstances differ from those here. It is not the law that contracts providing a party with the right to act in their sole discretion can never be subject to claims for implied breach of the covenant of good faith and fair dealing. Even though the obligation is not unlimited and cannot be applied in a manner that is "inconsistent with other terms of the contractual relationship," the New York Court of Appeals has expressly held that "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995); *S. Telecom Inc.*, 520 F. Supp. 3d at 505 ("Historically, New York courts have held that the covenant of good faith and fair dealing applies to cases where a contract contemplates the use of discretion.").

*Southern Telecom Inc. v. ThreeSixty Brands Group, LLC*, 520 F. Supp. 3d 497, cited by Biomet, provides an overview of New York law in this area. In that case, the court explained that "the language 'sole discretion'" is not "the be-all and end-all of whether the covenant of good faith and fair dealing applies." *Id.* at 507. Instead, courts should "read the contract as a whole to determine whether a limitation on the exercise of discretion would

14

negate a term of the contract and then, depending on [the court's] reading of the contract, ask the question whether such a limitation is necessary to avoid rendering a contractual obligation illusory." *Id.* In *Southern Telecom*, the defendant had "sole discretion" over approval of licenses for its marks, and denied all of plaintiff's proposed uses, allegedly solely because the proposals were submitted by the plaintiff. *Id.* at 510. The court held that these allegations stated a claim for breach of the implied covenant of good faith and fair dealing because if the defendant "could deny applications solely because [plaintiff] submitted them," that "would be to deprive [plaintiff] of the fruits of its contract and render the agreement illusory." *Id.* Here, Zest had discretion to decide whether to repurchase some or all of its product from Biomet. *See* Distribution Agreement § 13.4. But Biomet also had a corresponding right to recoup the price paid if Zest chose to repurchase the product, and to sell the product that Zest did not elect to repurchase. *See id.* Zest invoked its right to repurchase the product and took the position that Biomet could not sell the product to others; then it refused to repurchase any Zest product, allegedly in order to gain an upper hand in the negotiations and to harm Biomet. CC ¶¶ 19, 38. The inventory then "expired and became unusable," resulting in damage to Biomet. *Id.* ¶ 37. Implying a gloss of good faith and fair dealing on Zest's exercise of "sole discretion" is necessary to avoid rendering a contractual right — Biomet's right to resell remaining inventory either to Zest or third-party purchasers upon the termination of the Distribution Agreement — illusory. Thus, Biomet has stated a claim for breach of the implied covenant of good faith and fair dealing.[4]

---

[4] Zest also briefly argues that its motivations for refusing to repurchase the inventory are "irrelevant" because its conduct "consisted entirely of acts [it] was authorized to do by the contract." Br. at 10 (quoting *Transit Funding*, 48 N.Y.S.3d at 115). While the Distribution Agreement authorized Zest to elect whether to repurchase product from Biomet in its "sole discretion," it did not authorize Zest to exercise that discretion arbitrarily or irrationally in a manner that allegedly interfered with Biomet's contract rights.

The Court also rejects Zest's argument that it did not have an obligation to exercise its discretion in good faith because other provisions of the Distribution Agreement expressly impose an obligation of good faith or reasonableness. Br. at 10 (citing Distribution Agreement §§ 6.4, 3.13). While those provisions impose good faith or reasonableness obligations as contractual requirements, the implied covenant of good faith and fair dealing need not be expressed in the contract but is instead "implicit in every contract." *N.Y. Univ.*, 662 N.E.2d at 769.

The Court turns next to Zest's second argument, that Biomet's alleged breach of the Distribution Agreement precludes its implied covenant claim. Br. at 11. Zest, relying on material outside of the Counterclaims, argues that Zest's contractual obligations are excused because Biomet breached the Distribution Agreement when it did not provide Zest with inventory information as requested and continued to sell Zest product in its inventory. *Id.* (citing Dkts. 54-2 to 54-5). For the reasons already explained, the Court will not consider material outside the Counterclaims (except Exhibit 2, which is incorporated by reference), nor will it convert the instant motion into one for summary judgment. Notably, the only case Zest cites in support of its argument is a decision of this Court resolving a motion for summary judgment, not a motion to dismiss. *See Envy Branding, LLC v. William Gerard Grp., LLC*, No. 20-cv-03182 (JLR), 2024 WL 869156, at *14-15 (S.D.N.Y. Feb. 29, 2024). Thus, the Court will not dismiss the Counterclaim on this basis.

## CONCLUSION

For the foregoing reasons, Zest's motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 52.

Dated: June 5, 2025
      New York, New York

                                    SO ORDERED.

                                    JENNIFER L. ROCHON
                                    United States District Judge